UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CARTER'S OF NEW BEDFORD,          )
INC. d/b/a CARTER'S CLOTHING      )
AND FOOTWEAR,                     )
                                  )
            Plaintiff,            )
                                  )
                                  )   CIVIL ACTION NO.
                                  )   13-11513-DPW
       v.                         )
                                  )
NIKE, INC., and NIKE USA,         )
INC.,                             )
                                  )
            Defendants.           )


MEMORANDUM AND ORDER
March 31, 2014

## I. BACKGROUND

Plaintiff Carter's of New Bedford, d/b/a Carter's Clothing and Footwear, is a family owned business that operates two clothing and footwear retail stores in southeastern Massachusetts. Compl. ¶ 1. For nearly thirty years, Carter's has sold footwear and other apparel manufactured by Defendant Nike. *Id.* at ¶ 3. Over time, sales of Nike products have grown to account for more than one-third of Carter's annual retail sales. *Id.* at ¶ 4.

By letter dated March 15, 2013, Nike informed Carter's that it was terminating Carter's account effective June 30, 2013. *Id.*

at ¶ 9; Ex. B. The notice informed Carter's that Nike would accept no new orders from Carter's, and that any outstanding orders would be cancelled unless Carter's both notified Nike that it wanted the orders filled and paid for the orders in advance.[1] Ex. B. Carter's sought an explanation from Nike regarding the cause for the termination, but Nike provided none apart from stating that it was within its rights electively to terminate the relationship. *Id.* Carter's alleges on information and belief that Nike's termination of its account was motivated by a change in Nike's marketing strategy to favor large national retailers over smaller locally-owned stores. *Id.* at ¶¶ 9, 12. Carter's further alleges that Nike has similarly terminated the accounts of other small urban retailers. *Id.* at ¶ 12.

To ensure that Nike would fill its outstanding orders, Carter's paid Nike a sum of $160,582. Compl. at ¶ 11. As of the filing of the complaint on June 7, 2013, Nike had failed to respond to repeated requests from Carter's seeking confirmation that the pre-paid orders would be filled.[2] *Id.* Carter's alleges that the uncertainty from this lack of confirmation complicated

---

[1] Typically, under the parties' course of dealing, payment was not due until after merchandise had been received. Compl. ¶ 11.

[2] Carter's represents in its opposition to Nike's motion to dismiss that Nike finally confirmed on August 13, 2013 that it would fill the outstanding orders.

its efforts to formulate a new business plan following the dissolution of its relationship with Nike. *Id.*

Seeking to forestall the termination of its Nike account, Carter's filed suit in Bristol Superior Court alleging breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), violation of the Uniform Commercial Code (Count III), and violation of Mass. Gen. Laws. ch. 93A, § 11 (Count IV). Nike removed to this court on the basis of diversity jurisdiction and subsequently filed a motion to dismiss, which I now address.

## II.　　STANDARD OF REVIEW

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Berner* v. *Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (quoting *Gooley* v. *Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988) (internal quotation marks omitted). "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Maldonado* v. *Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

I "must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences in favor of the plaintiff." *Watterson* v. *Page*, 987 F.2d 1, 3 (1st Cir. 1993). While I am "generally limited to considering facts and documents that are part of or incorporated into the complaint," I "may also consider documents incorporated by reference in the [complaint], matters of public record, and other matters susceptible to judicial notice." *Giragosian* v. *Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (citation and internal quotation marks omitted; alteration in original).

### III. DISCUSSION

Nike has moved to dismiss the complaint on the grounds that its contract with Carter's contains a forum selection clause requiring this dispute to be litigated in Oregon.[3]

---

[3] In the alternative, Nike argues that the complaint fails to state a claim upon which relief can be granted. Because I must address the forum selection issue before I undertake to evaluate the claims themselves, and I conclude this is not the proper forum for this litigation, I do not reach the substance of Carter's claims.

Carter's relationship with Nike is governed by the "TERMS AND CONDITIONS OF SALE" (hereinafter the "Agreement") printed on each invoice Carter's receives from Nike.[4] Compl. ¶ 5; Ex. A. The Agreement contains a provision entitled "ATTORNEYS' FEES\ GOVERNING LAW\FORUM SELECTION," which states in relevant part:

> The Agreement, and all disputes arising out of the Agreement or out of the relationship between NIKE and Customer, will be governed by the laws of the state of Oregon. . . . Customer irrevocably consents to the jurisdiction of the state and federal courts located in the state of Oregon in connection with any action arising out of or in connection with the Agreement and waives any objection that such venue is an inconvenient forum. Customer will not initiate an action against Nike in any other jurisdiction. Nike may bring an action in any forum.

---

[4] The complaint alleges that the relationship between Carter's and Nike is "partially defined" by the Terms and Conditions of Sale. Compl. ¶ 5. However, apart from the vague allegation that "other customs and procedures have existed in the ongoing business relationship between Nike and Carter's that reflect the expectations and arrangements between Nike and Carter's in conducting their business together," *id.,* the complaint does not identify any other source of agreement between the parties. The Terms and Conditions themselves provide that "[e]ach Order, together with these Terms and Conditions and, if applicable Customer's credit application and account agreement, may be referred to collectively as the 'Agreement.'" Compl. Ex. A. ¶ 1. The Terms and Conditions further provide that "[t]he Agreement contains the entire agreement and understanding between the parties with respect to its subject matter and supersedes prior and contemporaneous oral and written agreements, commitments and understandings concerning that subject matter." Compl. Ex. A. ¶ 20.

Compl. Ex. A. ¶ 15. Invoking this clause, Nike argues that the complaint should be dismissed.[5] Carter's responds that the entire Agreement is an "unconscionable contract of adhesion" and therefore the forum selection and choice of law provisions, along with the rest of the agreement, are unenforceable.

### A. *Applicable Law*

Because this case is a diversity action, I must determine as an initial matter what law to apply in evaluating the validity of the forum selection clause. Both the Supreme Court and the First Circuit have expressly left open the question whether, under the

---

[5] Historically, in the First Circuit, "a motion to dismiss based upon a forum-selection clause is treated as one alleging the failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6)." *Silva* v. *Encyclopedia Britannica Inc.*, 239 F.3d 385, 387 (1st Cir. 2001). Nike has filed such a motion here. Although the Supreme Court recently held in *Atlantic Marine Constr. Co., Inc.* v. *United States District Court for the Western District Of Texas*, 134 S. Ct. 568 (2013), that the proper way for a defendant to invoke a forum selection clause is through a motion to transfer venue under 28 U.S.C. § 1404(a) – if the specified forum is another federal court – or through the doctrine of *forum non conveniens* – if the specified forum is a state or foreign court – *see id.* at 579-80, the Court specifically reserved the question whether a defendant may properly use a Rule 12(b)(6) motion to dismiss to accomplish the same purpose, *see id* at 580 (noting that the defendant in that case had not raised the issue). Because Nike has relied on substantial precedent from the First Circuit in filing a 12(b)(6) motion invoking the forum selection clause, and because I am satisfied that revising the technical form of the motion would not meaningfully alter the analysis except perhaps as to the standard of review on appeal, *see Martinez* v. *Bloomberg LP*, 740 F.3d 211, 216-17 (2d Cir. 2014), I will treat Nike's motion as they have presented it, as a Rule 12(b)(6) motion to dismiss.

-6-

*Erie* doctrine, the issue of a forum selection clause's enforceability should be regarded as "procedural" — and thus governed by federal law — or "substantive" — and thus governed by state law. *See Stewart Org., Inc.* v. *Ricoh Corp.,* 487 U.S. 22, 25-26, 32 & n. 11 (1988); *Huffington* v. *T.C. Group, LLC*, 637 F.3d 18, 23 (1st Cir. 2011). Nevertheless, in the absence of a conflict between state law and the federal common law standard set forth in *The Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1 (1972), the First Circuit has generally applied the *Bremen* standard. *See Huffington*, 637 F.3d at 23; *Rafael Rodriguez Barril, Inc.* v. *Conbraco Indus., Inc.*, 619 F.3d 90, 92 (1st Cir. 2010); *Rivera* v. *Centro Medico de Turabo, Inc.*, 575 F.3d 10, 16-17 (1st Cir. 2009).

Here, if I were to apply state law, the source would be the law of Oregon. This is the law to which Massachusetts choice of law principles direct me. *See Melia* v. *Zenhire, Inc.*, 967 N.E.2d 580, 586 (Mass. 2012) (validity of forum selection clause determined according to state law specified in choice of law provision); *Jacobson* v. *Mailboxes Etc. USA, Inc.*, 646 N.E.2d 741, 744 (Mass. 1995) (same). Although Oregon case law discussing forum selection clauses appears limited, and I could find no case explicitly citing *Bremen*, the standards have been described as "similar." *See Mittendorf* v. *Stone Lumber Co.*, 874 F. Supp. 292,

295 (D. Or. 1995). Given the absence of recent guidance from the Oregon Supreme Court, which last considered the issue over forty years ago, *see Reeves* v. *Chem Industrial Co.*, 495 P.2d 729, 731-32 (Or. 1972), I follow the First Circuit's practice of applying the federal common law, relatively secure in my understanding that Oregon law does not conflict.

## B. *Application*

Under *Bremen*, "the forum clause should control absent a strong showing that it should be set aside." 407 U.S. at 15; *see also Nike USA, Inc.* v. *Pro Sports Wear, Inc.*, 145 P.3d 321, 324 (Or. App. 2006) ("Forum selection clauses contained in commercial contracts are *prima facie* enforceable; they will be disregarded only where the evidence shows that enforcement would be unfair and unreasonable."). The Supreme Court has identified four grounds for finding a forum selection clause unenforceable:

> (1) the clause was the product of "fraud or overreaching," *id.* at 15;
>
> (2) "enforcement would be unreasonable and unjust," *id.*;
>
> (3) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court," *id.* at 18; or
>
> (4) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," *id.* at 15

As the party challenging the enforcement of the forum selection clause, Carter's bears the "heavy burden" of demonstrating why it should not be enforced. *Id.* at 17; *Huffington*, 637 F.3d at 23. Carter's has failed to meet that burden.

The most fundamental problem with Carter's argument in its opposition to Nike's motion to dismiss is that it is unsupported by, and in many cases in direct tension with, the factual allegations contained in the complaint. In the complaint, Carter's expressly alleges that the Agreement at least partially governs its relationship with Nike. Compl. ¶ 5. While the complaint goes on vaguely to allege that the parties' relationship was further defined by a course of dealing, *id.* at ¶ 9, it contains no factual allegations suggesting that the Agreement is unenforceable in whole or in part as the product of fraud, duress or overreaching. In contrast, Carter's opposition takes the position that the Agreement is unconscionable and unenforceable.

Even putting aside the inherent conflict between Carter's argument and the allegations in its complaint, Carter's still fails to demonstrate that it should be relieved of its obligation under the Agreement to litigate this matter in Oregon. Carter's argues that the Agreement was drafted unilaterally by Nike; that

it "is printed on the back on invoices, extends to multiple pages, and is printed in a small nine-point font size"; and that it is oppressive in that it forces Carter's to pursue any claim in Oregon but allows Nike to file suit in Massachusetts.[6]

That the Agreement was unilaterally drafted by Nike does not render it, or its forum selection clause, unenforceable. As the First Circuit has observed, "[o]ne of the classic Supreme Court cases concerning forum selection clauses, *Carnival Cruise Lines, Inc.* v. *Shute*, 499 U.S. 585 (1991), enforced a non-negotiated forum selection provision contained in the passengers' cruise tickets in a personal injury action." *Rivera*, 575 F.3d at 19. "[A]dhesion does not imply nullity of a contract." *Nieves* v. *Intercontinental Life Ins. Co. of P.R.*, 964 F.2d 60, 63 (1st Cir. 1992) (citation omitted). "If the wording of the contract is

---

[6] Carter's makes additional arguments based primarily on differences between the operative Agreement, Compl. Ex. A, and prior versions of the Agreement not incorporated into the complaint. These prior versions of the Agreement, as well as an affidavit by one of Carter's owners, are extraneous materials not properly before me on this motion to dismiss. *Rivera* v. *Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (Observing that "[t]he fact that a motion to dismiss on the basis of a forum selection clause is treated as a 12(b)(6) motion has certain consequences for the materials that a district court may appropriately consider when ruling on such a motion," and expressing disapproval at district court's "*sub silentio* conversion into a motion for summary judgment" by considering materials not incorporated into complaint). Nike has filed a motion to strike these additional materials, which I will grant. In any event, consideration of these materials would not have impacted my view of the merits of Carter's challenge.

explicit and its language is clear, its terms and conditions are binding on the parties." *Id.; see also Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 331 (1st Cir. 2000) ("[O]f course, even a contract of adhesion is enforced unless unconscionable or unfair."). As a general proposition, if Carter's found the terms of Nike's Agreement unacceptably unfair, it was free to cease doing business with Nike. However, as the filing of this suit suggests, it had substantial incentive to keep purchasing product from Nike despite certain demanding terms in the Agreement.

That the Agreement was "printed on the back on invoices, extends to multiple pages, and is printed in a small nine-point font size," barely warrants discussion. The forum selection clause appears in the same font and is the same size as the remainder of text in the Agreement, under a heading containing the words "FORUM SELECTION" in bold capital letters. Carter's cites no authority suggesting a three page commercial contract printed in small, but legible font is rendered unenforceable on that basis.

Carter's broadest argument is that the forum selection clause is simply unfair; both in that it requires a small family-owned business from Massachusetts to litigate disputes with Nike across the country in Oregon, and in that Nike is not similarly restricted in its ability to select a forum. That said, the case

law demonstrates that the "'heavy burden of proof . . . required to set aside [a forum selection] clause on grounds of inconvenience,' demands more of a litigant . . . than simply showing that another location would be more convenient." *In re Mercurio*, 402 F.3d 62, 66 (1st Cir. 2005) (citing *Carnival Cruise Lines*, 499 U.S. at 595). "Were it otherwise, forum selection clauses would almost never be enforceable, for inconvenience to at least one of the parties is an almost forgone conclusion when dealing with a provision that requires litigating away from one's home turf." *Id.* Here, there is no doubt that requiring Carter's to pursue its claims in Oregon would cause it to incur additional expense and suffer measurable inconvenience. But nothing about this case suggests that the realities of litigating in Oregon, should Carter's choose to press on, would rise to the level of "practical impossibility" that the applicable standard demands. *See Huffington*, 637 F.3d at 24.

## IV. CONCLUSION

For the reasons stated above, Nike's motion to dismiss is GRANTED.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE